**LEE LITIGATION GROUP, PLLC**
CK Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs, FLSA Collective Plaintiffs*
*and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| EDISON ANCHAHUA and FRANKLIN ANCHAHUA, *on behalf of themselves, FLSA Collective Plaintiffs, and the Class,* | |
| Plaintiffs, | Case No.: |
| v. | **CLASS AND COLLECTIVE ACTION COMPLAINT** |
| M D BUILDING SERVICES, INC. d/b/a MERIDAN BUILDING SERVICES, and MICHAEL K CARLIN, | Jury Trial Demanded |
| Defendants. | |

Plaintiffs, EDISON ANCHAHUA ("Plaintiff EDISON") and FRANKLIN ANCHAHUA, ("Plaintiff FRANKLIN" and collectively with Plaintiff EDISON, "Plaintiffs"), on behalf of themselves and others often similarly situated, by and through their undersigned attorneys, hereby file this Class and Collective Action Complaint against Defendants M D BUILDING SERVICES, INC. d/b/a MERIDAN BUILDING SERVICES ("Corporate Defendant"), and MICHAEL K CARLIN ("Individual Defendant" and collectively with Corporate Defendant, "Defendants") and state as follows:

1

**INTRODUCTION**

1.      Plaintiffs allege, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§201 *et. seq.* ("FLSA"), that they and similarly situated individuals are entitled to recover from Defendants: (1) unpaid overtime premiums; (2) unpaid wages, including overtime, due to timeshaving; (3) liquidated damages; and (4) attorney's fees and costs.

2.      Plaintiffs further allege that, pursuant to the New York Labor Law ("NYLL"), they and others similarly situated are entitled to recover from Defendants: (1) unpaid overtime premiums; (2) unpaid wages, including overtime, due to timeshaving; (3) unpaid prevailing New York State minimum wages; (4) unpaid spread of hour premiums; (5) statutory penalties; (6) liquidated damages; and (7) attorney's fees and costs.

**JURISDICTION AND VENUE**

3.      This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§1331, 1337 and 1343 and has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367.

4.      Venue is proper in the Southern District pursuant to 28 U.S.C. §1391.

**PARTIES**

5.      At all relevant times, Plaintiff EDISON was a resident of Queens County, New York.

6.      Plaintiff FRANKLIN is a resident of Queens County, New York.

7.      Corporate Defendant M D BUILDING SERVICES, INC. is a domestic business corporation organized under the laws of the State of New York, with a principal place of

business at 315 West 39th Street, Suite 1300, New York, NY, United States, 10018 and an address for service of process located at 28 Liberty St., New York, NY, United States, 10005.

8.      Individual Defendant is the sole owner, CEO, President, and principal of Corporate Defendant M D BUILDING SERVICES, INC. d/b/A MERIDAN BUILDING SERVICES. *See* **Exhibit A**, Corporate Defendant's "About Us" website, in which Individual Defendant introduces himself as the "President and sole owner" of Corporate Defendant.

9.      Individual Defendant exercises operational control as it relates to all employees including Plaintiffs, FLSA Collective Plaintiffs, and Class Members. Individual Defendant exercises the power to (and also delegates to managers and supervisors the power to) fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiffs, FLSA Collective Plaintiffs, and Class Members. At all times, employees of various job sites may complain to Individual Defendant directly regarding any of the terms of their employment, and Individual Defendant would have the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees. Individual Defendant exercised functional control over the business and financial operations of the Corporate Defendant.  Individual Defendant had the power and authority to supervise and control supervisors of Plaintiffs, FLSA Collective Plaintiffs, and Class Members, and could reprimand employees.

10.      At all relevant times, Corporate Defendant was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA and the NYLL.

11.     At all relevant times, the work performed by Plaintiffs, FLSA Collective Plaintiffs, and Class Members were directly essential to the business operated by Defendants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

12.     Plaintiffs assert claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all current and former non-exempt employees (including but not limited to porters, janitors, housekeepers, room attendants, cleaners, pest controllers, drivers, and custodians) employed by Defendants on or after the date that is six (6) years before the filing of the Complaint (hereinafter, "FLSA Collective Plaintiffs").

13.     At all relevant times, Plaintiffs and FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subject to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules – all of which have resulted in: (1) a complete failure to pay overtime premiums, for time worked beyond 40 hours per week; and (2) a failure to pay wages, including overtime, due to timeshaving. The claims of Plaintiffs stated herein are essentially the same as those of FLSA Collective Plaintiffs.

14.     The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to §16(b) of FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

15.     Plaintiffs assert claims for relief pursuant to the Federal Rules of Civil Procedure

("F.R.C.P.") Rule 23, on behalf of all non-exempt employees (including but not limited to porters, janitors, housekeepers, room attendants, cleaners, pest controllers, drivers, and custodians) employed by Defendants on or after the date that is six (6) years before the filing of the Complaint in this case as defined herein (the "Class" or "Class Members").

16.     The Class Members are readily ascertainable. The number and identities of Class Members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class Member are also able to be determined from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

17.     The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown because the facts on which the calculation of that number are presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of this Class.

18.     Plaintiffs' claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. Plaintiffs and Class Members were subject to the same corporate practices of Defendants of (i) failing to pay overtime premiums for hours worked beyond 40 per week; (ii) failing to pay wages, including overtime, due to timeshaving; (iii) failing to pay the prevailing 2024 New York State minimum wage; (iv) failing to pay spread of hour premiums; (v) failing to provide proper wage statements per requirements of NYLL; and (vi) failing to

provide proper wage notices to Class Members, at the date of hiring and annually, per requirements of NYLL. Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiffs and Class Members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices and procedures.

19.    Plaintiffs are able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented Plaintiffs in wage and hour cases.

20.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy—particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries, and damages suffered by each of the individual Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of

separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

21.     Defendants and other employers throughout the State violate New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

22.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class Members, including:

a.  Whether Defendants employed Plaintiffs and the Class within the meaning of New York State's labor laws and applicable state laws;

b.  What are and were the policies, practices, programs, procedures, protocols, and plans of Defendants regarding the types of work and labor for which Defendants did not pay Plaintiffs and Class Members properly;

c.  At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay Plaintiffs and Class Members for their work;

d.  Whether Defendants properly notified Plaintiffs and Class Members of their hourly rates and overtime rates;

e.  Whether Defendants paid Plaintiffs and Class Members overtime premiums at one-and-one-half times their regular hourly rates for all hours they worked in excess of forty (40) each workweek;

f.  Whether Defendants properly compensated Plaintiffs and Class Members for all hours worked due to their policy of timeshaving;

g.  Whether Defendants paid Plaintiffs and Class Members the prevailing New York State minimum wage for all hours worked;

h.  Whether Defendants paid Plaintiffs and Class Members spread of hour premiums for days worked with a spread of more than ten (10) hours;

i.  Whether Defendants provided proper wage statements informing employees of information required to be provided on wage statements as required under NYLL; and

j.  Whether Defendants provided proper wage and hour notice to employees, including, among others, the rate of compensation, pursuant to the requirements of NYLL.

## **STATEMENT OF FACTS**

*Plaintiff EDISON's Employment Background*

23.  In or around March 2022, Plaintiff EDISON was hired by Defendants to work as a porter for Defendants' MD Building Services located at 315 West 39th Street, Suite 1300, New

York, NY, United States, 10018. In or around May 2024, Plaintiff resigned due to issues of underpayment, as detailed below.

24.    Throughout his employment, Plaintiff EDISON was compensated by check at a straight hourly rate of $15.00 regardless of hours worked, including overtime hours (hours over 40 in a workweek). FLSA Collective Plaintiffs and Class Members were compensated at similar rates by check for all hours worked.

25.    Throughout his employment by Defendants, Plaintiff EDISON was not assigned a scheduled shift, and typically worked based on Defendants' operational needs. Plaintiff EDISON was scheduled to work anywhere from six (6) to twelve (12) hours a day, and anywhere between five (5) to seven (7) days a week. On average, Plaintiff EDISON worked a total of fifty-four (54) hours a week, two (2) to three (3) hours of which he was not compensated. FLSA Collective Plaintiffs and Class Members worked similar hours and schedules, some hours of which were uncompensated.

26.    Among the weeks Plaintiff EDISON worked overtime hours without overtime premium compensation was the workweek of 7/27/23. For that week, Plaintiff EDISON worked fifty-six (56) hours at a straight time rate without being paid his owed overtime premiums. Similarly, FLSA Collective Plaintiffs and Class Members worked overtime hours, which were paid at a straight rate regardless of the hours worked.

*Plaintiff FRANKLIN's Employment Background*

27.    In or around March 2022, Plaintiff FRANKLIN was hired by Defendants to work as a porter for Defendants' MD Building Services located at 315 West 39th Street, Suite

1300, New York, NY, United States, 10018. In or around December 2022, Defendants terminated Plaintiff FRANKLIN's employment.

28.     Throughout his employment, Plaintiff FRANKLIN was compensated by check at a straight-time hourly rate of $15.00 regardless of hours worked, including overtime hours (hours over 40 in a workweek). FLSA Collective Plaintiffs and Class Members were compensated at similar rates by check for all hours worked.

29.     Throughout his employment by Defendants, Plaintiff FRANKLIN was scheduled to work shifts that often varied based on Defendants' operational needs. From the beginning of his employment until July 2022, Plaintiff FRANKLIN was scheduled to work on Mondays through Fridays, from 4:00 pm to 12:00 am, eight (8) hours a day, for five (5) days a week. Frequently, Plaintiff FRANKLIN's schedule would include an additional one (1) to (2) days a week. As such, the total number of hours he worked in a workweek would range anywhere between forty (40) hours to fifty-six (56) hours a week. From July 2022 until the end of his employment, Plaintiff FRANKLIN worked six (6) days a week, eight (8) hours a day, for a total of forty-eight (48) hours per week.

30.     At all times, Plaintiff FRANKLIN would work his scheduled shift, two (2) to three (3) hours of which he was not compensated. FLSA Collective Plaintiffs and Class Members worked similar hours and schedules, some hours of which were uncompensated.

31.     Among the weeks Plaintiff FRANKLIN worked overtime hours without overtime premium compensation was the week ending on 6/30/22. For this week, Plaintiff FRANKLIN worked fifty (50) hours at a straight time rate without any his owed overtime premiums.

Similarly, FLSA Collective Plaintiffs and Class Members worked overtime hours, which were paid at a straight rate regardless of the hours worked.

*Timeshaving Class Claims*

32.    At all relevant times, Defendants knowingly and willfully subjected Plaintiffs, FLSA Collective Plaintiffs, and Class Members to a policy of timeshaving, in violation of the FLSA and the NYLL.

33.    At all relevant times, Defendants failed to pay Plaintiffs, FLSA Collective Plaintiffs, and Class Members for all hours worked. At all times, Defendants failed to track Plaintiffs', FLSA Collective Plaintiffs' and Class Members' work hours using timesheets, punch devices, or any other recorded mechanisms. When Plaintiffs, FLSA Collective Plaintiffs, and Class Members received their paychecks, two (2) to five (5) hours were deducted from employees' worked scheduled hours with no justification from Defendants. Given that Plaintiff EDISON was scheduled to work on average fifty-four (54) hours a week, and Plaintiff FRANKLIN was scheduled to work anywhere between forty (40) and fifty-six (56) hours a week, these deducted hours would have been overtime hours.

34.    Other employees, who worked similar schedules as Plaintiffs, were subject to Defendants' illegal policy of timeshaving through deduction of hours.

*Failure to Pay Overtime Premiums Class Claims*

35.    Defendants did not pay Plaintiffs, FLSA Collective Plaintiffs and Class Members any overtime premiums for hours worked over forty (40) in a single workweek. For the overtime hours Defendants compensated (after their unlawful deduction of 2 to 5 hours), Defendants only paid Plaintiffs, FLSA Collective Plaintiffs, and Class Members at a straight time rate. As an

example, for the workweek of 6/30/22, Defendants compensated Plaintiff FRANKLIN for 50 hours of work (even though Plaintiff FRANKLIN worked more hours) at a straight time rate, for a total of approximately $750.00. If Defendants had paid Plaintiff FRANKLIN's overtime hours at a proper overtime rate of 1.5 times the regular hourly rate, Plaintiff FRANKLIN would have been paid a total of $825.00 (40 hours at $15.00/hr = $600.00, 10.00 overtime hours at $22.5/hr = $750.00).

36.     As for Plaintiff EDISON, for the workweek of 7/27/23, Plaintiff EDISON worked for <u>at least</u> fifty-eight (58) hours in the prior workweek, but was only compensated $840.00, which reflected his compensation calculated at an hourly rate, and not an overtime rate for hours worked over forty (40). If Defendants calculated Plaintiff EDISON's overtime hours at his overtime hourly rate, Plaintiff EDISON would have received $1005.00 instead (40 hours at $15.00/hr = $600.00, 18 hours at $22.5/hr = $405.00).

37.     Similarly, FLSA Collective Plaintiffs and Class Members regularly worked in excess of forty (40) hours per workweek but never received any overtime premiums for hours worked in excess of forty (40) a week.

38.     Defendants knowingly and willfully operated their business with a policy of not paying the proper overtime rate thereof for all hours worked to Plaintiffs, FLSA Collective Plaintiffs, and Class Members in violation of FLSA and NYLL.

*Unpaid Spread of Hours Premiums Class Claims*

39.     At all relevant times, Defendants intentionally and willfully subjected Plaintiffs and Class Members to a policy of failing to pay them spread of hours premiums for their days worked with a spread of more than ten (10) hours, in violation of the NYLL.

40.     Plaintiff EDISON worked shifts of longer than ten (10) hours on a frequent basis, since his regular shifts were between six (6) to twelve (12) hours a day, but he was not paid any spread of hour premiums for the days which he worked a spread of more than ten (10) hours.

41.     Similarly, Class Members were regularly required by Defendants to work shifts with a spread of more than ten (10) hours. Despite requiring Plaintiffs and Class Members to work shifts with a spread of ten (10) or more hours, Defendants always failed to pay spread of hours premiums to Plaintiffs and Class Members for such shifts.

42.     Defendants' failure to pay spread of hours premiums to Plaintiffs and Class Members were clearly intentional. Defendants knew Plaintiffs and Class Members were working shifts lasting up to ten (10) or more hours because Defendants were the ones to assign their schedules and workloads. Despite this, Defendants intentionally disregarded their requirement to pay spread of hours premiums to Plaintiffs and Class Members for these shifts.

*Unpaid Prevailing New York State Minimum Wage Class Claims*

43.     From January 2024 to May 2024, Defendants improperly compensated Plaintiff EDISON at a straight rate of fifteen dollars per hour ($15.00) for all hours worked. Defendants failed to compensate Plaintiff EDISON's regular hours at the prevailing 2024 New York State minimum wage of $16.00 per hour and his overtime hours at New York State minimum overtime wage of $24.00 per hour, in violation of the NYLL.

44.     At all relevant times, Defendants knowingly and willfully operated their business with a policy of failing to pay Plaintiffs and Class Members at the prevailing New York State minimum wage, in violation of the NYLL.

<u>*WTPA Violations Claims:*</u>

45.    Plaintiffs and Class Members never received a wage notice from Defendants. They also did not receive accurate wage statements from Defendants.

46.    In violation of the Wage Theft Protection Act ("WTPA")—incorporated into NYLL—Defendants knowingly and willfully operated their business with a policy of not providing wage notices to Plaintiffs and Class Members at the beginning of their employment with Defendants.

47.    Defendants further violated the WTPA by failing to provide Plaintiffs and Class Members with accurate wage statements, because wage statements that do not reflect the actual number of hours worked by the employee do not satisfy the requirements of the WTPA. *See Shi Yong Li v. 6688 Corp.*, 2013 U.S. Dist. LEXIS 148020, *6 (S.D.N.Y. Sept. 27, 2013) ("The wage statements provided failed to accurately indicate the amount of time *actually* worked by tipped employees") (emphasis added); *Copper v. Cavalry Staffing, LLC*, 132 F. Supp. 3d 460, 468 (E.D.N.Y. 2015) (holding that "the 'number of overtime hours' that appears on the wage statement should include every hour *actually* 'worked' by the employee") (emphasis added); *Campos v. Bkuk 3 Corp.*, 2021 U.S. Dist. LEXIS 151528, *30 (S.D.N.Y. Aug. 10, 2021) ("Thus, when paystubs were received, they were not accurate insofar as they did not accurately reflect the hours *actually* worked") (emphasis added).

48.    In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that entails a concrete harm to an interest identified by the New York State legislature. As one Court observed:

Here, Plaintiffs allege that Defendants failed to furnish them with proper wage notices and statements, as required by NYLL §§ 195(1) and 195(3). These provisions were enacted as part of New York's Wage Theft Prevention Act ("WTPA"), N.Y. Lab. Law § 195, which sought "to expand the rights of employees to seek civil and criminal avenues of remedy for their employers failing to follow labor law appropriately and the specifications therein." N.Y. Spons. Mem., 2010 S.B. 8380. More specifically, the New York State Assembly passed the WTPA to address studies showing that a large number of employees were not being paid the wages owed to them, and that many employers were not adequately informing their employees of their wages and how they are calculated in language the employees could understand. *Id.* The New York State Assembly opined that existing penalties did not adequately deter employers from paying less than the wages owed, and stated that the WTPA would dramatically change this by increasing penalties for violating employees' rights. *Id.*

*Imbarrato v. Banta Mgmt. Servs.*, 2020 U.S. Dist. LEXIS 49740, *21-22 (S.D.N.Y. March 20, 2020)

49.     Here, Defendants' failure goes beyond generating a risk of harm to Plaintiffs and Class Members. Defendants' conduct actually harmed Plaintiffs and Class Members. Defendants' failure to provide wage notices and paystubs listing all hours actually worked and rates of pay, including overtime hours and overtime rates, deprived employees of the ability to contest the pay provided by Defendants, allowed Defendants to hide their wrong-doing, and necessitated the current litigation to vindicate Plaintiffs' and Class Members' rights. This conduct ensured Defendants' ability to further delay providing proper compensation to low wage earners entitled to protection under federal and state law. Defendants' failure to provide wage notices and wage statements to employees allowed Defendants to hide their responsibility and deprive employees of timely compensation.

50.     Had the wage statements Defendants provided to Plaintiffs and Class Members accurately listed the total number of hours Plaintiffs and Class Members actually worked, as required by law, Defendants would have had to either (a) increase the wages to correspond to the

hours actually worked or (b) forthrightly acknowledge, by way of the wage statement, that the employee's wages did not correspond to the hours the employee actually worked. Either possibility would have allowed Plaintiffs and Class Members to vindicate their rights under the NYLL. The deprivation of these possibilities therefore constitutes an injury.

51.     The failure to provide proper wage notices and wage statements continues to result in delayed payment of all proper wages owed to Plaintiffs and Class Members. This delayed payment caused Plaintiffs and Class Members to struggle to pay bills and other debts.

52.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage notices and wage statements as required by NYLL.

53.     The direct effect of understating the number of hours an employee worked is to reduce the wages that employees are listed as having earned on their wage statements. The direct effect of this, in turn, is to reduce the employee earnings that the employer later reports to the IRS through the employee's W-2 form, as such information is derived from the information on employees' wage statements. See *Mills v. Mills*, 2021 Minn. Dist. LEXIS 200, *5 (Minn. Dist. Ct., Anoka County, Tenth Judicial District May 20, 2021) ("Petitioner's gross annual income, based on her 2020 W-21 and paystub dated 12/24/20, is $130,321.30"); *T.F. v. N.F.*, 820

N.Y.S.2d 846, 846 (Sup. Ct., Suffolk Cty., June 22, 2006) ("In 2005 the plaintiff earned $133,086 as reflected on his final year paystub and W-2").[1]

54.     The effect of reporting reduced wages on an employee's W-2 is, in turn, to reduce the amount of social security benefits available to the employee, as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. *See McGauran v. Soc. Sec. Comm'n*, 2001 U.S. Dist. LEXIS 3187, *7 (N.D. Cal. March 19, 2001) ("Social security benefits are based upon the worker's earnings as reported to the [SSA] . . . [and] the worker's earnings are used to determine insured status for entitlement to retirement and to calculate cash benefit rates." (quoting Social Security Administration, Handbook § 1400 (1997)); *Coward v. Zurich Am. Ins. Co*., 2011 U.S. Dist. LEXIS 74543, *3 (N.D. Ill. July 8, 2011) ("Under the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year.'") (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

55.     "In the wake of the Supreme Court's decision in *TransUnion*, courts in this Circuit have held that plaintiffs lack standing to bring wage notice and statement claims under the NYLL absent any concrete, downstream consequences of the recordkeeping violation." *Chen v. Lilis 200 W. 57th Corp.*, No, 2023 U.S. Dist. LEXIS 38163, at 18, 2023 WL 2388728, at *8

---

[1] It is true that the wages reported on W-2 forms are not always precisely identical to those listed on an employees' last paystub for the year. One reason for is, as the IRS explains, that "W-2 wages include: (i) the total amount of wages as defined in section 3401(a); (ii) the total amount of elective deferrals (within the meaning of section 402(g)(3)); (iii) the compensation deferred under section 457; and (iv) the amount of designated Roth contributions (as defined in section 402A)." https://www.irs.gov/pub/irs-drop/rp-19-11.pdf. However, the possibility, that wages listed on a W-2 might be affected by such considerations does not change the fact that the base wages on the W-2 are derived from paystubs. The paystub processing service *realcheckstubs* explains: "A pay stub contains crucial information that assists in calculating W2 wages. Paystub provides gross wages, deductions, taxes withheld, and other income-related data. Individuals gather the necessary figures required for accurate W2 calculation by referring to the pay stub." https://www.realcheckstubs.com/blog/paystubs/6-steps-how-to-calculate-w-2-wages-from-paystub.

(S.D.N.Y. Mar. 7, 2023). "On the other hand, 'allegations' that go 'beyond asserting a bare statutory violation and sufficiently allege concrete harm' resulting from 'the underpayment of wages' pass muster because 'monetary injury is a concrete harm sufficient for purposes of Article III standing.'" *Thompson v. Elev8 Ctr. N.Y.*, LLC, 2023 U.S. Dist. LEXIS 122504, *21 (S.D.N.Y. July 17, 2023) (quoting *Mateer v. Peloton Interactive, Inc.*, 2022 U.S. Dist. LEXIS 125017, at *4 at *2 (S.D.N.Y. July 14, 2022)).

56.     Here, it is clear that Defendants' failure to provide Plaintiffs and Class Members with accurate wage statements entailed "concrete, downstream consequences" involving monetary injury. Had the number of hours been accurately reported for a given pay period, Defendants' automatic payroll system would have correspondingly increased the wages due for that period, which in turn would have been reflected in the W-2s that Defendants submitted to the IRS on behalf of Plaintiffs and Class Members. That, in turn, would have increased Plaintiffs' and Class Members' entitlement to social security benefits. Because the inaccuracy prevented this outcome, it constitutes an injury sufficient to provide Plaintiffs with Article III standing.

57.     Courts agree that the misreporting of wages constitutes a concrete injury cognizable under Article III:

> The Seventh Circuit in *Calderon* squarely addressed FICA standing. The plaintiffs in *Calderon* were former employees alleging the employer failed to pay their FICA taxes. 999 F.2d at 1105-06. The Seventh Circuit found that the plaintiffs lacked standing to compel the employer to pay their FICA taxes because "[b]enefits do not. . . depend on whether the employer actually paid the taxes." *Id*. at 1106. Plaintiffs could, however, enforce FICA's reporting requirement because it is the reporting of income that triggers benefits, and losing benefits is an injury under *Lujan*. *Id*. Whether the employer in *Calderon* made FICA payments on the plaintiffs' behalf had no bearing on the plaintiffs' entitlement to benefits.

*Id*. "[T]he plaintiff's real interest lies in ensuring that the [employer] make the proper reports of their income." *Id*.

*Coward*, 2011 U.S. Dist. LEXIS 74543, at *3-4.

58.    The case at bar is somewhat different from *Coward* inasmuch as Defendants actually underpaid Plaintiffs and other employees rather than merely misreporting their income. But this distinction has no bearing on the question of Article III standing, since it is still the case that "it is the reporting of income that triggers benefits, and losing benefits is an injury." *Id*. Plaintiffs and Class Members lost benefits by virtue of how Defendants reported their income, and how Defendants reported employees' income was the direct outcome of the inaccuracies in employees' wage statements. That is why "Plaintiffs have standing to enforce the statutory reporting requirements" imposed by the WTPA. *Calderon v. Witvoet*, 999 F.2d 1101, 1106 (7th Cir. 1993).

59.    Whether or not any Class Members are presently eligible for social security benefits is legally immaterial. *See id*. ("Although only citizens and aliens residing in the United States may receive benefits, 42 U.S.C. § 402(t), plaintiffs may eventually fulfill this requirement and therefore are entitled to keep their Social Security accounts accurate.").

60.    The *Calderon* court stressed that an employee's interest in ensuring that an employer properly report the employee's income is amplified by the difficulty of persuading the government to correct errors:

> The practical difficulty is that eligibility for Social Security benefits presumptively depends on reports that employers send to the government. A worker who seeks credit for unreported income bears the burden of proof, 42 U.S.C. § 405(c)(3), (4), which will be hard to carry if the employer has not furnished the customary documentation. The government believes employers who report earnings, because these reports are costly to make--they entail paying a

substantial tax. The government tends not to believe undocumented claims by employees, because these claims are essentially costless yet could establish entitlement to large pensions or disability benefits.

All of this means that the plaintiffs' real interest lies in ensuring that the Witvoets make the proper reports of their income.

*Id.*

61.     Here, the problem is not merely challenging but insurmountable. Plaintiffs and Class Members cannot even attempt to have their earnings report corrected because Defendants *did* report what they actually paid Plaintiffs and Class Members. The problem, rather, is that Plaintiffs and Class Members were underpaid. Yet the ultimate effect is the same—reduced social security eligibility. Because "[u]nder the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year,'" Plaintiffs was irreversibly injured with respect to his social security benefits as soon as Defendants sent his W-2 to the IRS. *Coward*, 2011 U.S. Dist. LEXIS 74543, at *3 (N.D. Ill. July 8, 2011) (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

62.     Defendants knowingly and willfully operated their business with a policy of failing to pay Plaintiffs, FLSA Collective Plaintiffs, and Class Members their proper wages, including overtime, due to timeshaving and failure to pay overtime premiums.

63.     Defendants knowingly and willfully operated their business with a policy of failing to pay spread of hour premiums to Plaintiffs and Class Members for days worked with a spread of ten (10) or more hours.

64.     Defendants knowingly and willfully operated their business with a policy of not paying Plaintiffs and Class Members the prevailing 2024 New York State minimum wages.

65.     Due to these unlawful acts of Defendants, Plaintiffs suffered unpaid wages, including overtime, unpaid spread of hour premiums, unpaid New York State prevailing minimum wages, and liquidated damages in an amount not presently ascertainable. In addition, Plaintiffs are entitled to reasonable attorney's fees, statutory penalties and costs and disbursements of the action, pursuant to NYLL.

## STATEMENT OF CLAIM

## COUNT I

## VIOLATION OF THE FAIR LABOR STANDARDS ACT

66.     Plaintiffs reallege and incorporate all the above allegations of this Complaint as fully set forth herein.

67.     At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiffs and FLSA Collective Plaintiffs are covered individuals within the meaning of FLSA, 29 U.S.C. §§ 206(a) and 207(a).

68.     At all relevant times, Defendants employed Plaintiffs and FLSA Collective Plaintiffs within the meaning of FLSA.

69.     At all relevant times, Corporate Defendant had a gross annual revenue in excess of $500,000.

70.     At all relevant times, Defendants had a policy and practice of failing to pay Plaintiffs and FLSA Collective Plaintiffs their overtime premiums for hours worked over forty (40), because employees were paid at a straight rate regardless of the number of hours worked.

71.     At all relevant times, Defendants had a policy and practice that failed to pay Plaintiffs and FLSA Collective Plaintiffs their wages, including overtime, due to timeshaving.

72.     Records, if any, concerning the number of hours worked by Plaintiffs and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiffs and FLSA Collective Plaintiffs should be in the possession and custody of Defendants. Plaintiffs intend to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

73.     Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiffs and FLSA Collective Plaintiffs their proper wages, including overtime hours, when Defendants knew or should have known such was due.

74.     Defendants knew of and/or showed a willful disregard for the provisions of FLSA as evidence by their failure to compensate Plaintiffs and FLSA Collective Plaintiffs their proper wages, including overtime, due to a straight rate.

75.     Defendants failed to properly disclose or apprise Plaintiffs and FLSA Collective Plaintiffs of their rights under FLSA.

76.     As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiffs and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to FLSA.

77.     Due to the intentional, willful, and unlawful acts of Defendants, Plaintiffs and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid overtime premiums; unpaid wages, including overtime, due to timeshaving; plus an equal

amount as liquidated damages.

78.    Plaintiffs and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorney's fees and costs pursuant to 29 U.S.C. § 216(b).

## COUNT II

## VIOLATION OF THE NEW YORK LABOR LAW

79.    Plaintiffs reallege and incorporate all the above allegations of this Complaint as fully set forth herein.

80.    At all relevant times, Plaintiffs and Class Members were employed by Defendants within the meaning of NYLL, §§ 2 and 651.

81.    Defendants failed to properly notify employees of their overtime rate, in direct violation of NYLL.

82.    Defendants knowingly and willfully failed to pay Plaintiffs and Class Members their overtime premiums for hours worked over forty (40), because employees were paid at a straight rate regardless of the number of hours worked.

83.    Defendants knowingly and willfully failed to pay Plaintiffs and Class Members their spread of hours for days worked with a spread of ten (10) or more hours.

84.    At all relevant times, Defendants had a policy and practice of failing to pay Plaintiffs and Class Members for all hours worked, due to timeshaving.

85.    At all relevant times, Defendants failed to compensate Plaintiffs and Class Members their proper wages at the prevailing New York State minimum wage rate.

86.    Defendants knowingly and willfully operated their business with a policy of not providing Plaintiffs and Class Members proper wage notice, at date of hiring and annually thereafter, as required under NYLL.

87.    Defendants failed to properly notify employees of their hourly pay rate and their hourly overtime rate, in direct violation of the NYLL.

88.    Defendants knowingly and willfully operated their business with a policy of not providing proper and accurate wage statements, as required under NYLL.

89.    Due to Defendants' NYLL violations, Plaintiffs and Class Members are entitled to recover from Defendants their unpaid overtime premiums, unpaid wages, including overtime, due to timeshaving, unpaid minimum wages, unpaid spread of hours, reasonable attorney's fees, liquidated damages, statutory penalties, and costs and disbursements of the action, pursuant to NYLL.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves, FLSA Collective Plaintiffs, and Class Members, respectfully request that this Court grant the following relief:

a.    A declaratory judgment that the practices complained of herein are unlawful under the FLSA, and the NYLL;

b.    An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c.    An award of unpaid overtime premiums due under the FLSA and the NYLL;

d.  An award of unpaid wages, including overtime, due to timeshaving under the FLSA and the NYLL;

e.  An award of unpaid minimum wages due under the NYLL;

f.  An award of unpaid spread of hour premiums due under the NYLL;

g.  An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay all wages, pursuant to FLSA and NYLL;

h.  An award of statutory penalties, pre-judgment and post-judgment interest, costs and expenses of this action together with reasonable attorney's and expert fees and statutory penalties;

i.  Designation of Plaintiffs as Representatives of the FLSA Collective Plaintiffs;

j.  Designation of this action as a class action pursuant to F.R.C.P. 23;

k.  Designation of Plaintiffs as Representatives of the Class; and

l.  Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury on all issues so triable as of right by jury.


Dated: New York, New York
       January 2, 2025                          Respectfully submitted,


                                    By:  */s/ C.K. Lee*
                                         C.K. Lee, Esq.
                                         **LEE LITIGATION GROUP, PLLC**
                                         C.K. Lee (CL 4086)
                                         Anne Seelig (AS 3976)
                                         148 West 24th Street, 8th Floor

New York, NY 10011
Tel.: (212) 465-1188
Fax: (212) 465-1181
*Attorneys for Plaintiffs, FLSA Collective
Plaintiffs, and the Class*