UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  6/11/2025
```

------------------------------------------------------------------X

EDISON ANCHAHUA and FRANKLIN ANCHAHUA,   :
                                                          :
               Plaintiffs,                                :
                                                          :
               -v-                                         :          25-cv-35 (LJL)
                                                          :
M D BUILDING SERVICES, INC. *d/b/a MERIDIAN*   :          MEMORANDUM AND
*BUILDING SERVICES*, and MICHAEL K. CARLIN,    :                ORDER
                                                          :
               Defendants.                                :
------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

Plaintiffs Edison Anchahua ("Edison") and Franklin Anchahua ("Franklin" and with Edison, "Plaintiffs") move for conditional certification of this case as a collective action under the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 *et seq.* ("FLSA").  Dkt. No. 24. Plaintiffs also seek an order (1) approving their form of notice to members of the alleged collective; (2) allowing opt-in plaintiffs to send consent forms to Plaintiffs' counsel; (3) requiring Defendants to produce specific information about potential opt-in plaintiffs; and (4) equitably tolling the statute of limitations.  *Id.*; Dkt. No. 25.

For the following reasons, the motion for conditional class certification is granted in part and denied in part.

## BACKGROUND

### I.    Complaint

Defendants are M D Building Services, Inc., d/b/a Meridian Building Services ("Meridian") and Michael K. Carlin ("Carlin" and with Meridian, "Defendants").  Meridian is a company incorporated under the laws of New York with its principal place of business in New York, New York.  Dkt. No. 1 ¶ 7.  It operates as a commercial cleaning business, providing

janitorial services to customers in the New York metropolitan area, Long Island, and Northern New Jersey. *Id.*; Dkt. No. 26-2 at 2–3. Carlin is the sole owner, chief executive officer, president, and principal of Meridian. Dkt. No. 1 ¶ 7; *see also* Dkt. No. 30-2 at 2.

Defendants employed Edison as a porter from March 2022 until his resignation in May 2024. Dkt. No. 1 ¶ 23. Defendants employed Franklin as a porter from March 2022 until Defendants terminated his employment in or around December 2022. *Id.* ¶ 27. Edison and Franklin both allege that, during their respective employments, they worked weeks wherein each was required to work for more than forty hours while being paid at a straight-time hourly rate of $15.00, regardless of hours worked, including overtime hours. *Id.* ¶¶ 24–27 (Edison); 28–31 (Franklin). Additionally, both were subject to a policy of time-shaving. *Id.* ¶ 32. When they received their paychecks, Defendants allegedly deducted two to five hours a week without justification. *Id.* ¶ 33. Plaintiffs allege that these deducted hours would have been overtime hours. *Id.*

Edison typically worked hours based on Defendants' operational needs, rather than a scheduled shift. *Id.* ¶ 25. During his two-year tenure working under Defendants, Edison was scheduled to work anywhere from six to twelve hours a day, and anywhere from five to seven days a week. *Id.* On average, Edison worked fifty-four hours a week, two to three hours of which were not compensated on a regular basis. *Id.* Edison also regularly worked weekly overtime hours without overtime compensation; for example, during the week ending on July 27, 2023, Edison worked fifty-six hours at a straight-time rate without being paid his owed overtime premiums. *Id.* ¶ 26.

Similar to Edison, Franklin was scheduled to work weekly shifts that varied based on Defendants' operational needs. *Id.* ¶ 29. From the beginning of his employment until July 2022,

Franklin was scheduled to work Mondays through Fridays, from 4:00 p.m. to 12:00 a.m., eight hours a day, for five days a week.  *Id.*  During this time, Franklin's schedule frequently included an additional one or two days a week; as such, the total number of hours he worked would range anywhere between forty to fifty-six hours per week.  *Id.*  Then, from July 2022 until the end of his employment, Franklin worked eight hours a day, six days a week, for a total of forty-eight hours per week.  *Id.*  Throughout these varied shift schedules, Franklin regularly did not receive compensation for two to three hours of his weekly shift.  *Id.* ¶ 30.  Like Edison, Franklin regularly worked overtime hours on a weekly basis without overtime compensation; for example, during the week ending with June 30, 2022, Franklin worked fifty hours at a straight-time rate without being paid his owed overtime premiums.  *Id.*

### A.    Evidence in Support of Conditional Certification

Edison and Franklin have submitted sworn declarations in support of the motion for conditional certification. The Court summarizes only that evidence pertinent to the pending motion.

Edison avers that he was employed by Meridian from March 2022 until he resigned in May 2024 because he "grew tired of not getting paid any overtime."  Dkt. No. 27 ¶ 1.  He asserts that he "raised the issue multiple times with [his] manager, Luciano [LNU[1]], but nothing was ever done."  *Id.*  Defendants' interrogatory responses identify Luciano Ramirez as Meridian manager for jobs located in New York City.  Dkt. No. 26-5 at 5.  Edison further avers that Meridian never paid him a premium for his overtime and that three other Meridian employees— whom he identifies as Franklin (the other Plaintiff), Walter Montes, and Luis Soriano—told him

---

[1] "LNU," as used in Plaintiffs' declarations, stands for "Last Name Unknown."  *See, e.g.*, Dkt. No. 27 ¶ 1; Dkt. No. 28 ¶ 3.

that they were also denied overtime.  Dkt. No. 27 ¶¶ 9–10.[2]  Edison states that both he and Franklin repeatedly complained to their manager that they were not paid overtime and that the manager responded that as a matter of company policy, the company did not pay overtime.  *Id.* ¶ 10 (stating that their manager Luciano would respond to complaints by saying it was "company policy for all hourly workers" that the company "just [doesn't] pay overtime").  Edison avers that some coworkers wanted to "speak up" against this practice but feared retaliation.  *Id.*

Franklin avers that he and other employees often worked over forty hours a week.  Dkt. No. 28 ¶¶ 6–7.  He was never paid a premium for his overtime hours.  *Id.* ¶¶ 2, 4, 12.  Franklin regularly discussed Defendants' payroll practices and policies with coworkers Edison, Walter Montes, "Felipe [LNU]," and Luis Soriano.  *Id.* ¶¶ 2, 13.  All of them were subject to the same wage and hour policies.  *Id.*  Franklin and coworkers (including those named above) also regularly complained about working overtime hours and not receiving overtime pay.  *Id.* ¶ 13.  When Franklin complained directly to his manager, Luciano Ramirez, about not receiving overtime pay, he was met with the same response Edison received above—that there was a company-wide policy not to pay overtime to hourly workers.  *Id.*

The declaration of counsel contains an analysis of the time and pay records for Edison showing that he regularly worked overtime hours without being paid an overtime premium.  Dkt. No. 26-4.

## PROCEDURAL HISTORY

Plaintiffs filed the complaint in this action on January 2, 2025.  Dkt. No. 1.  Plaintiffs assert claims on behalf of themselves and similarly-situated persons for failure to pay overtime

---

[2] In paragraph 9 of his declaration, Edison states that "Edison" told him that he was denied overtime.  Dkt. No. 27 ¶ 9.  In the next paragraph, he identifies Franklin as having complained about not being paid overtime.  *Id.* ¶ 10.  The Court assumes that the reference to Edison in paragraph 9 is a mistake.

and for time-shaving in violation of the FLSA.  Dkt. No. 1 ¶¶ 66–78.  Plaintiffs also claim

Defendants violated New York Labor Law ("NYLL") §§ 191 *et seq.*, by failing to pay overtime,

failing to make spread-of-hours payments, failing to pay minimum wage, and failing to provide

proper wage notices and wage statements.  *Id.* ¶¶ 79–89.  Defendants answered on March 5,

2025.  Dkt. No. 14.

Plaintiffs filed this motion for conditional certification on May 8, 2025.  Dkt. No. 24.

Plaintiffs also filed a memorandum of law in support of the motion as well as the declarations of

counsel and of each of the Plaintiffs.  Dkt. Nos. 25–28.  On May 16, 2025, Defendants filed a

memorandum of law and the declaration of counsel in opposition to the motion.  Dkt. Nos. 30–

31.  On May 23, 2025, Plaintiffs filed a reply memorandum of law in further support of their

motion.  Dkt. No. 32.

## DISCUSSION

Plaintiffs move for conditional certification of this case as a FLSA collective and for

approval of their form of notice.  Specifically, Plaintiffs seek to certify a collective action

consisting of "all non-exempt employees, including, but not limited to porters, janitors,

housekeepers, room attendants, cleaners, pest controllers, drivers, and custodians among others,

employed by Defendants in New York State on or after the date that is six years before the filing

of this Complaint."  Dkt. No. 25 at 1.  Defendants object to conditional certification and argue in

the alternative that, even if the Court conditionally certifies this case as a FLSA collective,

Plaintiffs' proposed collective is too broad and notice must be modified.  Dkt. No. 30.

## I.    Conditional Certification

The FLSA allows an employee who is aggrieved by a violation of the statute to maintain

an action against any employer "by any one or more employees for and in behalf of himself or

themselves and other employees similarly situated."  29 U.S.C. § 216(b).  "Section 216(b)'s

affirmative permission for employees to proceed on behalf of those similarly situated must grant the court the requisite procedural authority to manage the process of joining multiple parties in a manner that is orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure." *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989); *see also Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 n.1 (2013) (characterizing Section 216(b) as a "joinder process"). "[D]istrict courts have discretion, in appropriate cases, to implement [Section 216(b)] by facilitating notice to potential plaintiffs." *Hoffman-La Roche*, 493 U.S. at 169; *see Martinez v. JVA Indus. Inc.*, 2021 WL 1263133, at *2 (S.D.N.Y. Apr. 6, 2021).

The Second Circuit has endorsed a two-step process to determine whether a case may proceed as a collective action under the FLSA. *See Myers v. Hertz Corp.*, 624 F.3d 537, 554 (2d Cir. 2010). The standard for certifying a collective action under the FLSA is more relaxed than the standard for certifying a class under Federal Rule of Civil Procedure 23. *See Wood v. Mike Bloomberg 2020, Inc.*, 2024 WL 3952718, at *12 (S.D.N.Y. Aug. 27, 2024) (citing *Pino v. Harris Water Main & Sewer Contrs. Inc.*, 2020 WL 5708889, *3 (E.D.N.Y. Sept. 23, 2020)); *see also Scott v. Chipotle Mexican Grill*, 954 F.3d 502, 515–20 (2d Cir. 2020) (discussing the differences between standards for certification under Rule 23 and under Section 216(b) of the FLSA). First, the court makes "an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs." *Myers*, 624 F.3d at 555. Plaintiffs must only "make a 'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'" *Id.* (quoting *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997)).

At the conditional certification stage, the plaintiff's burden is "minimal." *Hong v. Haiku @ WP Inc.*, 582 F. Supp. 3d 117, 126 (S.D.N.Y. 2022) (quoting *Amador v. Morgan Stanley & Co. LLC*, 2013 WL 494020, at *4 (S.D.N.Y. Feb. 7, 2013)). "Plaintiffs can meet this burden by showing that 'there are other employees who are similarly situated with respect to their job requirements and with regard to their pay provisions.'" *Fraticelli v. MSG Holdings, L.P.*, 2014 WL 1807105, at *1 (S.D.N.Y. May 7, 2014) (quoting *Myers*, 624 F.3d at 555). This burden will not be satisfied "simply by 'unsupported assertions,' . . . but it should remain a low standard of proof because the purpose of the first stage is to merely determine whether 'similarly situated' plaintiffs do in fact exist." *Myers*, 624 F.3d at 555 (quoting *Dybach v. Fla. Dep't of Corr.*, 942 F.2d 1562, 1567 (11th Cir. 1991)). At the second step, "the district court will, on a fuller record, determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs." *Id.*; *see Andrade-Barteldes v. Valencia*, 2023 WL 8372989, at *5 (S.D.N.Y. Dec. 4, 2023).

"[T]o be similarly situated means that named plaintiffs and opt-in plaintiffs are alike with regard to some material aspect of their litigation." *Scott*, 954 F.3d at 516. Plaintiffs are "similarly situated . . . to the extent they share a similar issue of law or fact material to the disposition of their FLSA claims." *Id.* In deciding whether "similarly situated" opt-in plaintiffs exist, courts consider documents such as named plaintiffs' "own pleadings, affidavits, declarations, or the affidavits and declarations of other potential class members." *Trinidad v. Pret A Manger (USA) Ltd.*, 962 F. Supp. 2d 545, 558 (S.D.N.Y. 2013) (quoting *Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651, 661 (S.D.N.Y. 2013)). The documents must establish "'a defendant's plan or scheme to not pay overtime compensation' and must identify 'by name similarly situated employees.'" *Fernandez v. On Time Ready Mix, Inc.*, 2014 WL 5252170, at

*1 (E.D.N.Y. Oct. 4, 2014) (quoting *Sobczak v. AWL Indus., Inc.*, 540 F. Supp. 2d 354, 362 (E.D.N.Y. 2007)).

Importantly, "[w]hile plaintiff's burden at this stage is modest, it is not non-existent." *Khan v. Airport Mgmt. Servs. LLC*, 2011 WL 5597371, at *5 (S.D.N.Y. Nov. 16, 2011). "[C]ourts have declined to [grant conditional certification] where named plaintiffs present only conclusory allegations that similarly situated employees exist."  *Han v. Madison Ave. Realties, LLC*, 2022 WL 2609003, at *3 (S.D.N.Y. July 8, 2022) (quoting *Huer Huang v. Shanghai City Corp*, 2020 WL 5849099, at *9 (S.D.N.Y. Oct. 1, 2020)).  "[U]nsupported assertions" are similarly insufficient.  *Imbarrato v. Banta Mgmt. Servs., Inc.*, 2022 WL 1210868, at *3 (S.D.N.Y. Apr. 25, 2022) (quoting *Myers*, 624 F.3d at 555).

Plaintiffs have satisfied their modest burden to show that there existed a common policy and practice of asking employees to work more than forty hours in a week without paying them an overtime premium.  Plaintiffs identify particular occasions on which each of them was asked to work overtime hours without receiving overtime pay.  Dkt. No. 27 ¶¶ 4, 9–10 (Edison); Dkt. No. 28 ¶¶ 6, 12–13 (Franklin).  They also identify by name other employees who were subject to the same employment policies.  Dkt. No. 27 ¶ 9; Dkt. No. 28 ¶ 2.  Plaintiffs offer evidence based on their own personal knowledge that the same policies concerning overtime premiums and time-shaving were applied to other employees.  Dkt No. 27 ¶¶ 4, 9–10, 12; Dkt. No. 28 ¶¶ 2, 8, 12, 13, 14.  Meridian assigned employees to work together on teams; each time, an employee would be designated at random to work with a different employee on a building assignment.  Dkt. No. 27 ¶ 2; Dkt. No. 28 ¶ 2.  Accordingly, Plaintiffs have first-hand information about the hours that other employees worked.  Each Plaintiff also attests under oath that their manager, Luciano Ramirez, informed them that as a matter of policy Meridian does not pay overtime.  Dkt

No. 27 ¶ 10; Dkt. No. 28 ¶ 13.  Their declarations are supported by time records which establish that Defendant paid the same straight-time rate regardless whether the employee worked overtime and regardless of location.  Dkt. Nos. 26-3, 26-4.

Defendants argue that Plaintiffs' allegations, as well as the declarations by Edison and Franklin, are generalized, vague, conclusory, and unsupported by evidence.  Dkt. No. 29. Defendants specifically argue that (1) Plaintiffs' allegations fail to show that members of the proposed collective are similarly situated; (2) Plaintiffs' anecdotal evidence is insufficiently specific to satisfy their burden at this stage; (3) Plaintiffs' cited conversations with coworkers are nothing but "hearsay"; and (4) courts have rejected broad certification where plaintiffs have submitted nearly identical affidavits.  *Id.*  These arguments fail.

First, Defendants cite several cases in which courts denied conditional certification when presented with allegations "too conclusory to demonstrate" that members of the proposed collective were similarly situated.  Dkt. No. 29 at 12–14 (citing *Taveras v. D & J Real Estate Mgmt. II, LLC*, 324 F.R.D. 39 (S.D.N.Y. 2018); *Sanchez v. JMP Ventures, L.L.C.*, 2014 WL 465542 (S.D.N.Y. 2014); *Jeong Woo Kim v. 511 E. 5th St., LLC*, 985 F. Supp. 2d 439 (S.D.N.Y. 2013); *Eng-Hatcher v. Sprint Nextel Corp.*, 2009 WL 7311383 (S.D.N.Y 2009); *Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527 (3d Cir. 2012); *D'Anna v M/A-COM, Inc.*, 903 F. Supp. 889 (D. Md. 1995); *Flores v. Osaka Health SPA, Inc.*, 2006 WL 695675 (S.D.N.Y. 2006)).  All of these cases are distinguishable.  The court in *Taveras* denied certification because plaintiffs' allegations were "too conclusory" in that they "d[id] not identify the names or job titles of any person," provided "no evidence" of the applicability of a common policy to other workers, did not "state specifics of any conversations with other employees," did not "explain how they had the opportunity to observe the regular work schedules of other employees at other locations," and

did not demonstrate that the plaintiffs' manager was "a manager of employees at other locations." 324 F.R.D. at 41. The plaintiffs in *D'Anna* and *Sanchez* similarly failed to specifically demonstrate a common policy or provide any specifics of their conversations with, or observations of, similarly situated employees. *See D'Anna v. M/A-COM, Inc.*, 903 F. Supp. 889, 894 (D. Md. 1995) (holding that plaintiff's "mere listing of names, without more, is insufficient absent a factual showing that the potential plaintiffs are 'similarly situated'"); *Sanchez*, 2014 WL 465542 at *2 (holding that plaintiff's inability to "provide *any* detail as to a *single* such observation or conversations" made his statements "the kind of unsupported assertions . . . found to be insufficient to conditionally certify a class under 216(b)"). Here, by contrast, Edison and Franklin not only provide the names of several coworkers who also had not been paid overtime, but also describe the contexts in which they had conversations with those coworkers or observed Defendants apply common policies and practices to those coworkers. Dkt. No. 27 ¶¶ 2, 9–12; Dkt. No. 28 ¶¶ 2, 11, 13–14. And unlike the plaintiffs in *Jeong Woo Kim*, *Eng-Hatcher*, and *Zavala*, Plaintiffs here are not attempting to impute their limited experience as porters working for Meridian to employees working under dissimilar conditions. *Compare Jeong Woo Kim*, 985 F.Supp.2d at 451 (holding that plaintiff was similarly situated to other kitchen staff who were not paid at an hourly rate but that plaintiff had failed to "demonstrate[] a sufficient factual nexus between himself and the non-kitchen staff" who were paid at an hourly rate), *Eng-Hatcher*, 2009 WL 7311383 at *3 (denying certification of a nationwide class where plaintiff submitted a declaration identifying only five other workers employed at the same stores at plaintiffs, and attempted to extrapolate those shared experiences under a few individual store managers to hundreds across the country), *and Zavala* 691 F. 3d 527 at 537 (finding a previously certified class of plaintiffs were not actually similarly situated due to

vast differences in the payroll structures and policies), *with* Dkt. Nos. 26-5, 27–28 (demonstrating that the payroll for all Meridian hourly workers in New York State is managed by the same manager and averring that Plaintiffs have engaged with similar named and unnamed hourly workers employed by Meridian in a variety of working contexts by random assignment, many of whom confirm having similar payroll experiences).  Finally, in *Flores*, the plaintiffs tautologically alleged a class of employees defined as victims of defendants' violations of the FLSA.  *See Flores*, 2006 WL 695675 at *3 (refusing to grant certification for the circularly-defined class consisting of "all [] current and former employees of the defendant who were not paid in accordance with [FLSA's] overtime provisions and whose tips were misappropriated by the defendants").  Plaintiffs here do not make that error, instead clearly stating that they are similarly situated to "all non-exempt employees, including, but not limited to porters, janitors, housekeepers, room attendants, cleaners, pest controllers, drivers, and custodians among others, employed by Defendants in New York State on or after the date that is six years before the filing of this Complaint."  Dkt. No. 25 at 6.

Second, Defendants argue that absent specific information about the "dates or times," Dkt. No. 29 at 16, when Plaintiffs' alleged observations or conversations with similarly situated employees occurred, Plaintiffs fail to show a factual nexus with those similarly situated and fail to prove an unlawful common policy.  *Id.* at 14, 16; *see also Cano v. Four M Food Corp.*, 2009 WL 5710143, at *7 (E.D.N.Y. Feb. 3, 2009).  But "Defendants' complaints would hold Plaintiffs to a standard far beyond that required by FLSA."  *Hussein v. Headless Widow LLC*, 2024 WL 5078317, at *4 (S.D.N.Y. Dec. 11, 2024)).  Plaintiffs do not need to identify the precise date or time of a conversation with an employee in their motion for conditional certification.  *See Estrada v. Kingsbridge Marketplace Corp.*, 2018 WL 11583444, at *10 (S.D.N.Y. Oct. 16,

2018) (holding that "minimum level of detail" was satisfied when employees recounted conversations with specific people about specific topics); *Garcia v. Spectrum of Creations Inc.*, 102 F. Supp. 3d 541, 549 (S.D.N.Y. 2015) ("While it would be helpful to have the time and dates of conversations, it is not surprising that plaintiffs would be unable to recall such specifics.").

Third, Defendants argue that Plaintiffs' "conversations" with coworkers amount to nothing but hearsay. Dkt. No. 29 at 15. But this Court and others have held that *Myers* is satisfied by "hearsay statements" that other employees are victims of a common policy as well as by the plaintiff's observations. *See Han*, 2022 WL 2609003, at *5 (quoting *Ruiz v. Truffa Pizzeria & Wine Room Corp.*, 2021 WL 568249, at *4 (S.D.N.Y. 2021)); *see also Mendoza v. Ashiya Sushi 5, Inc.*, 2013 WL 5211839, at *5–6 (S.D.N.Y. Nov. 25, 2013) (granting conditional certification based on affidavit of plaintiff's observations and conversations with others and observing "'courts regularly rely on . . . hearsay statements in determining the propriety of sending notice' in FLSA conditional collective action certifications" (quoting *Salomon v. Adderley Indus., Inc.*, 847 F. Supp. 2d 561, 563 (S.D.N.Y. 2012)); *Liping Dai v. Lychee House, Inc.*, 2018 WL 4360772, at *8 (S.D.N.Y. Aug. 29, 2018) (holding that an attestation by plaintiffs of their observations and coworkers' complaints is sufficient to support conditional certification, and citing cases); *Martinenko v. 212 Steakhouse Inc.*, 2022 WL 1227140, at *4 (S.D.N.Y. Apr. 26, 2022).

Fourth, Defendants argue that courts have rejected broad certification where plaintiffs have submitted nearly identical affidavits, only differing in minute details, like shift schedules. Dkt. No. 29 at 14 (citing *Fernandez v. Sharp Mgmt. Corp.*, 2016 WL 5940918 at *7 (S.D.N.Y. 2016)). The declarations here do not suffer from that flaw. Each declarant attests to his own experience. Franklin avers to knowing a slightly larger subset of specific individuals who share

his grievances around Meridian's wage policies and provided a very different set of details regarding the nature of his job and his interactions with Edison and Franklin's manager, Luciano Ramirez. *See generally* Dkt. Nos. 27–28. Franklin also justifies his grievances around overtime within the context of the specific nature of the jobs he performed at Meridian, whereas Edison provides more color to his personal grievances, stating that he resigned for lack of overtime and was only working such long hours because of lack of overtime pay. *Id.* To the extent that there are common facts averred in both declarations, that is because both declarants attest that Defendants followed a common labor policy and practice. Rather than undermine Plaintiffs' motion, the similarities in the facts averred by the declarants supports conditional certification.

The Court will conditionally certify a FLSA collective composed of cleaners, porters, and janitors employed by Meridian in New York State at any time during the three-year period that ended on the date that this complaint was filed.

However, Defendants' argument that the collective should not extend beyond cleaners, porters, and janitors is well-taken. The declarations of the two Plaintiffs are limited to other cleaners, porters and janitors. Dkt. No. 27 ¶ 13; Dkt. No. 28 ¶ 15. They do not speak to housekeepers, room attendants, drivers, custodians or pest controllers. *Cf. She Jian Guo v. Tommy's Sushi Inc.*, 2014 WL 5314822, at *3 (S.D.N.Y. 2014) (finding a collective defined as "all of those hourly paid, non-managerial employees of the defendants, including but not limited to chefs, waiters, kitchen workers, dishwashers, and delivery persons or any other equivalent employee" overly broad, given plaintiffs' declarations only provided evidence that delivery workers were similarly situated). The owner of Meridian attests that within the last six years, Meridian did not employ room attendants, custodians, pest controllers, drivers, or housekeepers, and that all employers who are porters, janitors, or cleaners are classified as cleaners. Dkt.

No. 30-1 ¶¶ 3–4; *see also* Dkt No. 29 at 8 ("[Meridian] does not employ 'housekeepers, room attendants, drivers, custodians, or pest controllers' and outsources all pest control services'" (quoting Dkt. No. 25 at 6)).

In addition, the collective will be limited to persons who were employed by Meridian at any time within the three-year period ending when the complaint was filed. The statute of limitations under the FLSA is two years for non-willful violations and three years for willful violations. 29 U.S.C. § 255(a). Although Plaintiffs allege claims under the New York Labor Law, which has a six-year statute of limitations, Plaintiffs' state claim does not provide the basis for a longer collective under the FLSA. *See Vilella v. Pup Culture LLC,* 2023 WL 7986562, at *7 (S.D.N.Y. Nov. 17, 2023). First, the fact that Plaintiffs currently assert NYLL claims is legally irrelevant to their motion for conditional certification. *See id.*; *Hamadou*, 915 F. Supp. 2d at 668. Second, the opt-in notice that will be sent to covered employees will operate only to make them plaintiffs for the purposes of FLSA claims. *See, e.g.*, *Mangahas v. Eight Oranges Inc.*, 2023 WL 3170404, at *4 (S.D.N.Y. May 1, 2023); *Cheng v. Via Quadronno LLC*, 2022 WL 1210839, at *3 (S.D.N.Y. Apr. 25, 2022). It will not make them members of a Rule 23 class for the purposes of pursuing a NYLL claim, nor will it authorize Plaintiffs' counsel to pursue a NYLL claim for them individually. *See Scott*, 954 F.3d at 518–19; *see also Cheng*, 2022 WL 1210839, at *3. As this Court has previously stated:

> At best, a person who receives a notice of the FLSA opt-in action and later receives a Rule 23 notice of the NYLL action would be confused as to why they are receiving two notices. At worst, in the event a Rule 23 class is not certified, service of a FLSA notice with a six-year time period could lull the recipient into believing that, by submitting a consent to join the FLSA collective, she also has taken the actions necessary to become a plaintiff on the NYLL claims."

*Vilella,* 2023 WL 7986562, at *7; *see also Trinidad*, 962 F. Supp. 2d at 564; *Hamadou*, 915 F. Supp. 2d at 668.

By the same token, however, the argument of Defendants that the collective should be limited to those persons who were employed by Defendants in the two-year period before the complaint was filed is not well-founded. Dkt. No. 29 at 2. The complaint contains the allegation that Defendants willfully violated the FLSA, Dkt. No. 1 ¶¶ 32, 38, 62, and each Plaintiff avers that he complained about not receiving overtime pay and that those complaints were rebuffed, Dkt. No. 27, ¶¶ 9–10; Dkt. No. 28 ¶¶ 12–13. It would be premature for the Court to conclude that Plaintiffs cannot show a willful violation. *See Hussein*, 2024 WL 5078317, at *7; *Han*, 2022 WL 2609003, at *5. Finally, as to whether the notice period of three years begins from the date of the filing of the complaint or from the date of the Court's determination of this motion, the Court continues its past practice: "In an abundance of caution, the Court authorizes notice to be keyed to the three-year period prior to the filing of the Complaint, with the understanding that challenges to the timeliness of individual plaintiffs' actions will be entertained at a later date and that the three-year period is without prejudice to defendants' challenging particular opt-in parties in a motion for decertification." *Han*, 2022 WL 2609003, at *5 (citing *Guan v. Long Island Bus. Inst., Inc.*, 2016 WL 4257549, at *5 (E.D.N.Y. Aug. 11, 2016)).

## II.    Proposed Notice

Plaintiffs also ask that the Court authorize their proposed form of notice to be distributed by mail, email, and text message, with a 90-day time period to opt-in. Dkt. No. 25 at 19. Defendants argue: (1) the notice should not refer to "unpaid wages due to time-shaving"; (2) the notice should include the names of Defendants' counsel; and (3) there should be a twenty-day time period to opt-in. Dkt. No. 29 at 14.

"[T]he district court maintains 'broad discretion' over the form and content of the notice." *Diaz v. N.Y. Paving Inc.*, 340 F. Supp. 3d 372, 386 (S.D.N.Y. 2018) (quoting *Martin v. Sprint/united Mgmt. Co.*, 2016 WL 30334, at *15 (S.D.N.Y. Jan. 4, 2016) (internal quotation

marks omitted)).  The Court must ensure that notice "is timely, accurate, and informative."

*Hoffman-La Roche*, 493 U.S. at 171.  Courts are "guided by the goals of the notice: to make as

many potential plaintiffs as possible aware of this action and their right to opt in without

devolving into a fishing expedition or imposing undue burdens on the defendants."  *Elmajdoub v.*

*MDO Dev. Corp.*, 2013 WL 6620685, at *4 (S.D.N.Y. Dec. 11, 2013) (quoting *Guzelgurgenli v.*

*Prime Time Specials Inc.*, 883 F. Supp. 2d 340, 356 (E.D.N.Y. 2012)).  The Court must avoid

authorizing "notices that are 'unduly argumentative, meant to discourage participation in the

lawsuit, or are unnecessary or misleading.'"  *Huer Huang*, 2020 WL 5849099, at *17 (quoting

*Knox v. John Varvatos Enters.*, 282 F. Supp. 3d 644, 664 (S.D.N.Y. 2017)); *see Mikityuk v.*

*Cision US Inc.*, 2021 WL 1750370, at *7 (S.D.N.Y. May 4, 2021).

It is customary that notice be disseminated by first-class mail as well as by email because

"given the reality of communications today, email notification is more effective at notifying

potential opt-in plaintiffs than mailed notice alone."  *Park v. FDM Group Inc.*, 2019 WL

2205715, at *6 (S.D.N.Y. May 22, 2019) (quoting *Knox*, 282 F. Supp. 3d at 667).  In addition,

"courts allow . . . dissemination [by text] where 'the nature of the employer's business facilitated

a high turnover rate among employees.'"  *Id.* at *7 (quoting *Kucher v. Domino's Pizza, Inc.*,

2017 WL 2987216, at *6 (S.D.N.Y. May 22, 2017)); *see also Mikityuk*, 2021 WL 1750370, at

*9.  Plaintiff has made a sufficient showing for the Court to authorize notice by first-class mail,

email, and text message.  *See Martinenko*, 2022 WL 1227140, at *7.

The Court directs the removal of the notice's reference to time-shaving as an independent

basis for recovery.  As both parties note, the FLSA does not cover "gap-time" claims, or claims

for unpaid straight-time hours, so long as the employer paid the employee at least federal

minimum wage for the time worked.  *See Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711

F.3d 106, 116 (2d Cir. 2013) (establishing that "FLSA does not provide for a gap-time claim even when an employee has worked overtime . . . the text of FLSA requires only payment of minimum wages and overtime wages"); Dkt. No. 29 at 10 ("[G]ap pay claims . . . are not permitted under FLSA."); Dkt. No. 32 at 8 ("The FLSA only covers unpaid overtime hours, not unpaid straight-time hours.").  The complaint asserts a single FLSA claim for failure to pay overtime due to time-shaving.  It does not assert an independent claim for time-shaving.  The notice as drafted could lead to the misleading impression that a plaintiff can recover under FLSA for time-shaving that did not result in the failure to pay overtime.  Accordingly, the notice should be redrafted to provide that: "Pursuant to the FLSA, Plaintiffs are seeking to recover: (1) unpaid overtime premiums, including due to time-shaving; (2) liquidated damages; and (3) attorneys' fees and costs."

Defendants also contend that Plaintiffs' proposed collective notice should be modified to include contact information for Defendants' counsel.  Dkt. No. 29 at 20.  "[I]inclusion of a defendant's identity and contact information is common in this District," and thus Plaintiff's "proposed notice should be supplemented to include defense counsel's information."  *Zhao v. Surge Private Equity LLC*, 2023 WL 3477591, at *8 (S.D.N.Y. May 16, 2023).  The notice should inform the recipients that if they choose to join this case, they should not contact the Defendants' lawyers directly.  That language is sufficient to guard against the risk that a potential plaintiff will mistakenly reach out to Defendants' counsel while preserving the right of an employee who chooses not to join the action to reach out to Defendants for information or to provide assistance.  The notice is a communication from the Court; it is not intended to be an advertisement by Plaintiffs' counsel.  *See Vilella*, 2023 WL 7986562, at *9; *Cheng*, 2021 WL 4319569, at *6.

The Court grants a sixty-day opt-in period after notice is sent, as is typical for courts in this District. *See, e.g., Huer Huang*, 2020 WL 5849099, at *17. While some courts have granted ninety-day opt-in periods, such grants are generally made when the parties agree on the period or when special circumstances require an extended opt-in period. *Id.* at *18. Defendants do not agree to a ninety-day period, and the Court finds no such special circumstances in this case. *See, e.g.*, *Vilella*, 2023 WL 7986562, at *8; *Bittencourt v. Ferrara Bakery & Café Inc.*, 310 F.R.D. 106, 117 (S.D.N.Y. 2015). Accordingly, the notice should be amended to provide for a sixty-day opt-in period.

Defendants argue that the certification should be limited to FLSA claims because Section 216(b) "is not a proper conduit through which to assert state law claims." Dkt. No. 29 at 2. The FLSA 216(b) notice and consent to join apply only with respect to the FLSA claims and not with respect to the NYLL claims. *See Martinenko*, 2022 WL 1227140, at *9; *Cheng*, 2022 WL 1210839, at *3. The Court will not amend the notice on this ground. The notice appropriately refers to the NYLL claims, but also makes clear that the consent to join will only make an employee a claimant with respect to the FLSA claims and not with respect to the NYLL claims. *See Han*, 2022 WL 2609003, at *6; *Hussein,* 2024 WL 5078317, at *6.

## III.    Equitable Tolling

Plaintiffs ask that the Court order that the FLSA statute of limitations be tolled from the date of the filing of the complaint until Plaintiffs are able to send notice to potential opt-in plaintiffs. Dkt. No. 25 at 20. Plaintiffs additionally contend that courts have increasingly granted tolling to "avoid the prejudice to actual or potential opt-in plaintiffs due to the extraordinary circumstances it takes for a motion for certification to be moved for and decided." *Id.* (citing *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 170 (S.D.N.Y. 2014)). Defendants object, asserting that equitable tolling is not warranted here. Dkt. No. 29 at 21.

"[T]he language of FLSA and the Supreme Court's holdings do not allow for a rule of equitable tolling similar to *American Pipe* [*& Constr. Co. v. Utah*, 414 U.S. 538 (1974)] whereby the statute stops running merely upon the filing of a FLSA claim or a motion for conditional certification." *Huer Huang*, 2020 WL 5849099, at *14. Indeed, the absence of equitable tolling similar to *American Pipe* is one reason that courts insist on prompt filings of motions for conditional certification and attempt to issue prompt rulings on such motions. *See id.* (explaining that FLSA protects employers by requiring that plaintiffs affirmatively opt-in within two or three years after the action is accrued, which motivates courts to act promptly to ensure potential plaintiffs have their day in court). What the Court stated in *Huer Huang* applies equally here: "The Court will wait to make a determination until it is confronted with individualized facts showing that a plaintiff whose claims accrued prior to the statute of limitations has been diligent in pursuing those claims." *Id.* "However, it is clear that the language of FLSA and the Supreme Court's holdings do not allow for a rule of equitable tolling similar to *American Pipe* whereby the statute stops running merely upon the filing of a FLSA claim or a motion for conditional certification." *Id.*; *see also Vilella*, 2023 WL 7986562, at *8. Since there is no such showing here, Plaintiffs' application for equitable tolling is denied.

## IV. Names and Social Security Numbers

Plaintiffs seek an order requiring Defendants to produce, within ten days, a list of all members of the collective in Excel format with names, titles, compensation rates, last known mailing addresses, email addresses, all known mobile telephone numbers, and dates of employment. Dkt. No. 25 at 18. They also ask for social security numbers to perform a skip trace to obtain a valid address for those employees to whom mailings are returned as undeliverable. *Id.* at 18. Defendants argue that they should not be required to produce social security numbers or compensation rates. Dkt No. 29 at 21.

The Court will allow discovery of the names, mailing addresses, email addresses, telephone numbers, and dates of employment of the members of the putative class.  *See*, 2021 WL 568249, at *6; *Huer Huang*, 2020 WL 5849099, at *14; *Knox*, 282 F. Supp. 3d at 663; *see also Benavides v. Serenity Spa NY Inc.*, 166 F. Supp. 3d 474, 488 (S.D.N.Y. 2016) ("[C]ourts in this District commonly grant requests for the production of names, mailing addresses, email addresses, telephone numbers, and dates of employment in connection with the conditional certification of a FLSA collective action." (quoting *Martin*, 2016 WL 30334, at *19–20)). However, Plaintiffs have not yet made a sufficient showing to obtain social security numbers of members of the putative class.  *See Ruiz,* 2021 WL 568249, at *8; *see also Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 448 (S.D.N.Y. 2011).  Requests to compel production of social security numbers are "within the Court's sound discretion," and courts often decline to allow discovery of social security numbers due to "privacy concerns."  *Whitehorn*, 767 F. Supp. 2d at 448.  However, courts will grant such a request upon a showing that "names and contact information are insufficient to effectuate notice."  *Id.*  Such a showing has not been made here.  *See id.*; *Martin*, 2016 WL 30334, at *20 (holding that plaintiffs had not demonstrated the necessity of obtaining social security numbers).

Plaintiffs are not entitled at this stage to the compensation rates of the members of the putative class.  The function of Section 216(b) conditional certification is to "facilitat[e] notice to potential plaintiffs."  *Hoffman-La Roche*, 493 U.S. at 169.  The Court is charged with ensuring employees "receiv[e] accurate and timely notice concerning the pendency of the collective action."  *Id.* at 174.  Plaintiffs do not need the compensation rates of members of the collective in order to ensure proper notice.  The provision of compensation rates about members of the

collective *before* they even have the opportunity to determine whether they wish to participate in this action only threatens to compromise potential plaintiffs' privacy without improving notice.

## V.    Filing of Consent Forms

Plaintiffs ask that the consent forms be sent to them directly, arguing that requiring opt-in claimants to file their forms with the Clerk of Court discourages participation and makes it more difficult for Plaintiffs' counsel to conduct their investigation and contact their possible clients. Dkt. No. 25 at 20.  Defendants do not oppose that request, but they ask that Plaintiffs inform them of all opt-ins within thirty days of the mailing of the notice.  Dkt. No. 29 at 14.

The language of the FLSA stating that an action is deemed "commenced" only on "the subsequent date on which [a] written consent is filed in the court," 29 U.S.C. § 256(b), suggests that consents should be sent directly to the Court.  If consents instead languish in counsel's mailroom, the rights of potential opt-ins could be compromised.  Each day the consent is not submitted to the Clerk of the Court would be an additional day on which the statute of limitations runs.  It is principally for that reason that the Court has previously ordered that consents be sent to the Clerk of the Court.  *See Mikityuk*, 2021 WL 1750370 at *10.  The Court, however, must recognize reality.  The submission of a large number of consent forms to the Court burdens the clerk's office.  *See Nahar v. Dozen Bagels Co. Inc.*, 2015 WL 6207076, at *7 (S.D.N.Y. Oct. 20, 2015).  It also risks compromising the privacy rights of the opt-ins, as the form necessarily includes complete contact information for the opt-ins which would need to be redacted by the clerk if publicly filed.  *See Mikityuk*, 2021 WL 2413340, at *3 (denying reconsideration on procedural grounds but recognizing that "the submission of consent forms directly to the Clerk of the Court can impose heavy burdens on personnel in that office, who must scan the consent forms, file information that is public on the docket while filing other information under seal, and preserve the physical copies of the forms").  The Court will permit the submission of the consent

forms directly to Plaintiffs' counsel but will also order Plaintiffs' counsel to file the consent

forms on the ECF docket no later than two days after the day that they are received.  "In that

manner, and given the efficiencies of electronic filing, the Court will attempt to avoid any

prejudice to the would-be opt-ins."  *Martinenko*, 2022 WL 1227140, at *8.  This order will also

satisfy Defendants' request that they be informed promptly of any opt-ins.

## CONCLUSION

Plaintiffs' motion for conditional collective certification is GRANTED IN PART and

DENIED IN PART.

The Clerk of Court is respectfully directed to close Dkt. No. 24.


SO ORDERED.


Dated: June 11, 2025
      New York, New York                    _____
                                              LEWIS J. LIMAN
                                    United States District Judge